Good morning. May it please the Court, Stephen Shakin appearing for petitioner. There is a relatively narrow but important issue before the Court, and it is the Attorney General, the Board's interpretation of a specific provision of the Child Status Protection Act. And it actually is even more narrow than that. It really hinges on the interpretation of the word pending. And I know that there has been a statement about deference to be afforded to the agency. But I noted that in the Pradosh case, which is really perhaps the only case to address the Child Status Protection Act, at the very beginning, at page 1163, the Court refers to addressing delays in visa processing and adjudication. And that would indicate to the petitioners that in the spirit of Pradosh, which to give a more expansive application, they did not intend to follow the Board's interpretation, which is that the Child Status Protection Act applies only to a delay in the processing of the application by the agency, which shifted from the INS to the CIS. To avoid confusion, I'll call it the agency. Counsel, I'm having difficulty trying to construe the applicable time period. Where do you start? You start with August 17th, 92, which apparently both sides agree is the priority date, right? Yes, that would be the date that the agency acknowledged receiving the application. And he turned this particular petitioner turned 21 in February of 1999. So it would be our position that the application of the Child Status Protection Act would exclude that time. In other words, he'd get that time back so that he would still be considered a child under the age of 21 for all visa purposes, whether it was adjustment of status or whether it was visa processing at a consulate. And the agency, the Board, said no, you only can subtract the period of time from the filing to the time that we approved it. And that's the difference. That's the dispute over the definition of the word pending. The agency says at age 22 he's ineligible, right? Well, according to the statute, he's prior to the Child Status Protection Act. That's irrefutable. He'd be ineligible under that particular category. He could conceivably, of course, proceed in a different category. But we are addressing the issue as to whether or not he should be treated as a child because there was a tremendous backlog in the availability of visas. And it's our view that Pradish, by that language that I cited, certainly would support that interpretation. Also in page 1171 at Pradish, and again, Your Honor, I recognize Pradish dealt with a different procedural matter, but there were some general principles of law that I think apply. Yeah, but in the end, aren't we brought back to construing the lapse of time here? Yes. Okay. Now, isn't the key date the date that the I-130 petition was filed, not the date the State Department came up with? Well, I think they're both key dates. I think the starting point would be the date that we agree that the petition was received by the agency. All right. What's that date? That was August 17th of 1992. Okay. That's the priority date. We all apparently agree with that. I don't think there's any dispute about the facts here. Okay. Now, where is the divergence in the computation? Diversion in the computation is that the agency says it's just the period of time, which I believe was a few months, certainly not a period of time which would assist him under the Child Status Protection Act, that the period of time between the filing and the date that we notified him of an approval, which was sometime in 1993, it wouldn't possibly give him any assistance, but that is the relevant time period. In other words, pending means before the agency, not before anybody else. That's correct. And you and I had the State Department. Yes. I mean, that was a simple question, simple answer, I hope. Sure. That's what the whole thing boils down to. Yes. And we're saying that because of the language in Pradesh about delays in visa processing, which, of course, a delay in visa processing is due to many things, one of which is extreme backlogs. And I also noted, as I was saying, that at page 1171, when in the Pradesh case, when they were talking about when does a matter become final for purposes of the Child Status Protection Act, the government was arguing that once the agency makes a final determination, that's it. And the court said, this court said, no, it's, the final determination is not just when the agency makes, when the agency charged with immigration matters, and it kept shifting, it shifted from the INS to the CIS in all these cases, that it's when, as long as the matter is still being considered. So I think by analogy, it's reasonable to say that even if the agency, the CIS, is to say we finished our business when we approved it, clearly the matter is still pending in front of the State Department waiting for approval of a visa because the priority, it has to be reached. The purpose of this language, whatever it means, is to prevent the bureaucratic delay from undoing what a child is entitled to. Isn't that about right? That's what the statute says, yeah, but it seems to have been a, that's a, let me put it this way, that's one very narrow interpretation of the statute, but I think in Pradesh it was given a more generous interpretation. I mean, one of the problems is it's not 100 percent clear exactly what Congress intended because the real problem, the real problem in family unity, what's causing the breakup of families and the separation of families is not so much that the agency charged with adjudicating petitions is taking a long time, and there are remedies for that, such as filing mandamus. The real problem is that there's a tremendous backlog in visas, and once your priority date is reached, you don't get handed a visa right away. There's a pretty lengthy process where you have to fill out a significant number of forms, provide a lot of documents, come to several interviews. It's evaluated. So that's just as much a cause of delay and of emotional stress to families as the relatively brief delay in submitting your I-130 and the birth certificate to the agency. And I realize it's unusual for me to say that the CIS isn't as guilty of delays, but they're not the only ones guilty of delays. And I just want to say I don't believe that deference is an issue here based on Pradesh, which certainly is more than a colorable argument that this Court doesn't take the strict interpretation that the agency takes. I think, in fact, it would be necessary for the Court to make the deference. What is your position on when the relevant I-130 petition was filed? That's the 92? 92. That's we've used. There's another one. There's another one that was filed, Your Honor, the second one. And that was filed. That's not before the Court because it was never ruled on. But I'll certainly have to explain it to you. As a procedural safeguard to give petitioner another option, we were arguing that under the Velardi holding of the board that if there was going to be any dispute, which there didn't appear to be raised, a dispute about the, you know, the procedure of seeking a motion to reopen. The government just disagreed with our interpretation of the law. But we didn't, you know, you don't know at the very beginning of a case where the case is going to go. We wanted to protect petitioner. So we filed a new petition so that we could assert a separate ground of reopening under Velardi. However, that was not before the Court. How old was your client when he married his 74-year-old bride? I believe, since that isn't before the Court, I don't have a perfect memory, but I believe he was about 21. I think within six months, I believe. And, Your Honor, unless the Court has further questions, I think we should. No. We'll hear from the other side, and you may reserve your time, counsel. Thank you. We'll hear from the government. Thank you. May it please the Court, my name is Aviva Poxter for the Respondent. Petition for review should be denied in this case, Your Honors, because the Board didn't abuse its discretion in denying petitioner's motion to reopen. The Board properly interpreted the formula put into place in the Immigration and Nationality Act by the Child Status Protection Act and found that petitioner was not eligible for that type of protection. Okay. Take us through the application of the formula. Okay. Well, first, the first problem in this case, Your Honors, is that it's not the dates in this case are not clear. Petitioner didn't give us ---- You've got a position to defend here. Yes. Yes. The way the formula works is that the beneficiary's age is locked in on the date that his priority date becomes current. In other words, when he's eligible. Okay. That's August 17th, 1992. Right. Less the number of days that the visa petition was pending, provided that the beneficiary seeks to acquire the status of a lawful permanent resident within one year of such availability. In this case, as an initial matter, he did not apply for adjustment of status. The only adjustment of status application that's in the record was attached to his motion to reopen. It does not appear to have actually been filed with the CIS. And what are the consequences of that? He can't, just on that basis alone, he can't qualify. So that's ---- But isn't he part of his father's application or not? His ---- he was actually on his ---- on the application filed by his father for his mother. That's correct. However, he ---- That was August 17th, 1992, at which time he was only about, what, 14? Yes. That's correct. He was born in 78. So on the priority date, he's only 14 years of age. Why doesn't he qualify? Because it's not ---- it's ---- we have to also apply the rest of the formula, and we don't ---- he gave several different dates for when the visa was actually approved, when he actually became eligible. He claimed that in 19 ---- in his adjustment application, which was filed with the board again, he said ---- I'm sorry, with the I-130 application that was filed with the board, he said that his mother and siblings adjusted in 1998. However, he did not seek adjustment at that time. And, in fact, he could not adjust at that time because he was not an unmarried child of a citizen, because he was married to his wife. Doesn't the Immigration Service alien files disclose all of this? It's a factual matter? They could. I am not aware of anything being in the file that would ---- I believe the petitioner sought the records while the proceedings were pending, and this is what the record is as it stands now. And that's the record that was before the agency as well, upon which it based its decision. And if we look at the plain language of the formula involved, the formula talks about ---- Well, the formula says, Now, what date should I plug into that step one? Well, again, we don't know the actual approval, the date upon which his mother adjusted. And I'm referring now to ---- Okay. But doesn't that defeat the government's position?  a visa number will become available? to substantiate that? A petitioner has the burden in this case, Your Honor. He has to show his eligibility for adjustment. And our position is that he hasn't done so. And if you look at the provision of the Child Status Protection Act and the formula in question, it talks about the age of the alien on which an immigrant visa number becomes available for such an alien. That's right. But only if the alien has sought to acquire status within one year, reduced by the number of days in the period during which the applicable petition was pending. And that's the language that is ---- Your position is that this juvenile at age 14 failed within one year. In other words, he should have done something before he was 15 years of age? Is that what you're saying? No. We don't ---- again, we don't know when the approval actually occurred. When he was eligible to adjust. We know the period by which it was pending, which was about probably less than a year. But we don't know when his mother actually adjusted, when he became as such eligible for adjustment. And what he would like the agency to do is basically, instead of construing the period pending, as the period from the time that the request for a visa is filed to the date on which it's approved, instead of using that period of time, he would like you to use the period of time from the time that it was filed until the adjustment actually could have taken place. And that's not ---- Do you know whether it has, in fact, been approved? It was ---- I believe the visa for the mother, yes, was approved. But we don't know the date. Right. And in addition, we don't know. I mean, we know the ---- I believe the petition was approved in 93. We don't know the date. We don't know when the mother adjusted, when a number became current. You say adjusted. You're referring to the I-130. I'm referring actually to the I-485, which is the application that occurs for adjustment of status after an I-130 is approved. It's a two-step process. What was the I-130 approved? 1993 at some point. Okay. Reduced by the number of days in the period during which the applicable petition was pending. Your construction of that is what? Well, our construction of that is the application pending being the time, that period is the time from which the I-130 was filed, and then the I-130 was approved. And that's the period roughly between 1992 and 1993. It's not the entire period of time during which he was seeking adjustment or during which his family sought adjustment. And again, if you look at the language of the statute itself, a petition can't be pending once it's already approved. It wouldn't make sense for the word pending to be used. And in addition, when you talk about a petition versus a visa, you're talking about something that has not been approved versus something that has been approved. So once it's approved, it's an approved visa. It's not a petition any longer. So that the plain language of the statute itself supports the board's determination. What's the practical effect of construing this the way counsel for the other side wishes us to construe it? Basically, it eliminates the formula. The formula is not there anymore.  Basically, it eliminates the formula. It does. It eliminates the formula. It says if a parent ever filed for you while you were a minor, you get to adjust. And that's not what this was put into place for. And certainly if Congress had wanted to say that, why put this formula in? You could just say if your parent files for you, Congress would have said. If your parent files for you when you're under 21, you're always eligible. That would have been the easiest way to do this, rather than to put in a formula that at least is complicated enough to make it to this court for review. And in addition, if you look at the House reports that's cited in our brief, that report talks about the purposes of the Child Status Protection Act itself. And the purpose was to eliminate a specific backlog, which was not a State Department backlog. These aren't regulations that necessarily apply to the State Department. This is a regulation that applied to the former IMS, now CIS. That's footnote 3. Yes. And I believe it's in the text as well. But it is definitely footnote 3.  And the purpose of the act doesn't say we're going to jump all these minors ahead of the line for everybody else who's waiting for a number to become current, who's waiting to actually be able to get the visa to adjust. It doesn't say that. It says we're going to work on this backlog that CIS has, and we're going to try to remedy that particular situation. And unfortunately for Petitioner, that doesn't help him. But that doesn't mean that there's anything wrong with the Board's interpretation of it. And it's really on the plain language of this particular statute. That's what makes sense. Well, where did Petitioner go wrong here? Well, there are several points at which there were problems for Petitioner. First of all, he never, he again never applied for adjustment. He was married during, in 1998 when he potentially could have adjusted with the rest of his family. And so that was his. But he was ineligible because he was married. Right. I mean, the most obvious. And he's no longer married. Does that change things? Right. That changes things because I believe that put him back into looking for this particular visa through his family, rather than looking through his spouse, which is what he was doing. So by marrying his 74-year-old bride, he shot himself in the immigration foot. In a sense, yes, Your Honors, that's correct. All right. Thank you, Counsel. Thank you. We will hear from Mr. Shakin. Yes. Your Honors, I listened to what the government said. It's pretty consistent with what they said in their briefs. I think our different positions are before the Court, and I don't want to repeat myself. I specified footnote three to give you a chance to take a look at it. What about the purposes we find in the legislative history? Well, those are the purposes that were cited, Your Honor. But when this – again, I don't want to repeat myself, but I have to in order to answer you. When it came before Pradosh, then the Court did on two occasions make reference to matters outside of what was in that footnote. They talked about the visa processing, which is something utterly different than the adjudication by the service. And they talked about as long as the matter is pending. That's why I – and again, if someone does want to repeat themselves, I'm forced to do it. But I think the Court understands my position, and I have nothing further to add to what we said. Thank you, Counsel. Thank you, Your Honors. The case just argued will be submitted for decision.
judges: Bezzer, O'scannlain, Trott